UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DISVISION
Civil Action No.: 5:22-cv-00416

| | |
|---|---|
| WILLIAM R. RUSSELL,   )<br>    )<br>    Plaintiff,    )<br>    )<br>    v.    )<br>    )<br>NIVO CORPORATION d/b/a   )<br>MEKKELEK CUSTOM WOODWORK  )<br>& CABINETRY,    )<br>    )<br>    Defendant.    )  | COMPLAINT |

Plaintiff, William R. Russell ("Plaintiff" or "Russell"), by and through counsel, brings this action for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25 *et seq.*, against Defendant Nivo Corporation d/b/a Mekkelek Custom Woodwork & Cabinetry ("Defendant").

## NATURE OF PLAINTIFF'S CLAIMS

1. Plaintiff brings his FLSA claim pursuant to 29 U.S.C. § 216(b) and seeks to recover unpaid overtime wages and statutory penalties within the three-year period preceding the filing of this Complaint.

2. Plaintiff's FLSA claims result from Defendant's policy and practice of failing to timely pay Plaintiff all statutory overtime wages by averaging the total hours Plaintiff worked during a two week pay period, deducting time for lunch breaks where Plaintiff performed work, and by miscalculating Plaintiff's overtime rate in weeks in which Plaintiff received commissions.

3. Plaintiff's NCWHA claim against Defendant results from Defendant's willful failure to timely pay Plaintiff all regular wages, including commissions, earned on his regularly

schedule paydays and the regularly scheduled payday following the termination of his employment.

## THE PARTIES

4. Plaintiff is an adult individual who is a resident of Clayton, North Carolina.

5. Defendant is a domestic corporation registered and in good standing in the State of North Carolina.

## JURISDICTION AND VENUE

6. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201 *et seq.*

7. Plaintiff's NCWHA claim is based on the law of the State of North Carolina. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the pendant state statutory claims because they arise out of the same nucleus of operative facts giving rise to Plaintiff's FLSA claims.

8. This Court has personal jurisdiction because the Defendant conducts substantial business in in Wake County, North Carolina, which is located within this judicial district.

9. Venue is proper in this judicial district because Defendant has substantial business contacts in this district and because the unlawful acts alleged herein occurred in Wake County, North Carolina, which is located within this judicial district.

10. The alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## COVERAGE ALLEGATIONS

11. At all relevant times, Defendant has been an "enterprise" within the meaning of Section 3(r) of the FLSA 29 U.S.C. §203(r).

12. At all relevant times, Defendant has been an "enterprise engaged in commerce or in the production of good for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engage in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

13. At all relevant times, Defendant was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

14. At all relevant times, Plaintiff was an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

15. At all relevant times, Plaintiff was an individual employee who was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

16. At all relevant times, Defendant has been an employer within the meaning of Section 95-25.2(5) of the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

17. At all relevant times, Plaintiff was an employee within the meaning of Section 95-25.2(4) of the NCWHA, N.C. Gen. Stat. § 95-25.2(4).

## **PLAINTIFF'S FACTUAL ALLEGATIONS**

18. Defendant is an enterprise engaged in designing, manufacturing, and installing custom wood furniture.

19. Russell began his employment with Defendant on or about May 5, 2021 and held the Project Manager role.

20. At all relevant times, Defendant employed Russell during the three-year period preceding the filing of this Complaint.

21. At all relevant times, Russell was an hourly, nonexempt employee within the meaning of the FLSA and Russell was eligible for overtime compensation for all work performed over forty (40) hours in a workweek.

22. At all relevant times, Defendant had a practice of automatically deducting a lunch period from employee's worktime, regardless of whether the employee took a lunch break.

23. From about May 5, 2021 until June 5, 2021, Defendant automatically deducted a 45 minute lunch break from Russell's time each day, even though Russell performed work for Defendant during that time. Around June 5, 2021, Russell complained to Nel Byzio ("Byzio"), Defendant's Administrator, that he did not take 45 minutes for lunch. Russel told Byzio that he frequently worked through his lunch break. In response, Defendant reduced the automatic lunch deduction to 30 minutes per day.

24. From about June 2021 to about May 2022, Defendant deducted 30 minutes per day from Russell's work hours despite having knowledge that Russell was not taking a 30 minute uninterrupted lunch break each day due to Defendant's work demands.

25. In or about May 2022, Russell complained to Byzio again about Defendant's 30-minute automatic lunch deduction and told her that he frequently worked through his lunch breaks. In response, Defendant began reducing the automatic lunch deduction to 15 minutes per day for the remainder of his employment.

26. Defendant had knowledge that Russell frequently did not take a lunch break but Defendant nonetheless automatically deducted between 15 and 45 minutes from Russell's time each day. Plaintiff estimates that, during his tenure with Defendant, he worked through his entire

lunch break four out of five workdays each week. Plaintiff further estimates that, of the lunches he did take, 40% of those breaks were shorter than the time period that Defendant deducted from Plaintiff's hours. As a result of Defendant's policy, Russell frequently went unpaid for time that he performed work for Defendant during his purported "break." Therefore, Defendant failed to pay all wages accruing to Russell on his regularly scheduled paydays by knowingly permitting or requiring Russell to work off-the-clock.

27. Due to Defendant's policy of automatically deducting a lunch period regardless of whether Russell actually took a lunch break, Russell worked unpaid (a) straight time hours in workweeks where Russell worked less than 40 hours, (b) overtime hours in workweeks where Russell worked exactly 40 hours, and (c) overtime hours in workweeks where Russell worked more than 40 hours.

28. Defendant did not calculate and pay an overtime premium for Russell based on a seven-day workweek. Instead, Defendant had a policy of averaging the number of hours Russell worked in a two-week pay period in order to avoid paying overtime. For example, if Russell worked 60-hours in the first workweek and 20-hours in the second workweek during the same two-week pay period, Defendant would treat Russell as if he had worked two forty-hour workweeks. This policy and practice of averaging the number of hours worked each pay period resulted in unpaid overtime compensation owed to Russell.

29. By way of example, Russell worked a total of 82.75 hours during the pay period of April 4, 2022 through April 17, 2022, consisting of 44.25 hours during the first workweek and 38.5 hours during the second workweek. Defendant compensated Russell for 2.75 hours of overtime, when it should have compensated Russell with 4.25 hours of overtime.

30. The example in Paragraph 30 is representative of Defendant's policy and practice of averaging the total number of hours worked in a two-week pay period throughout Russell's employment.

31. Additionally, Defendant promised to pay Russell a 3% commission for each job Russell "closed." While employed, Russell closed jobs worth a combined total of more than $600,000, which would entitle Russell to at least $18,000. However, Defendant paid Russell only $4,396.29 in commissions over the course of his employment.

32. Russell irregularly received commission payments and rarely, if ever, received commission payments in the pay period in which the commission was earned.

33. When Defendant did pay commissions to Russell, Defendant failed to include commissions as part of Russell's regular rate, thus unlawfully reducing Russell's overtime rate for those pay periods.

34. By way of example, during the pay period of April 18, 2022 through May 1, 2022, Defendant paid Russell a $773.49 commission. Defendant failed to include Russell's earned commission in his regular rate of pay when calculating Russell's overtime premium rate when calculating Russell's overtime premium rate.

35. The example in Paragraph 35 is representative of Defendant's policy and practice of failing to properly calculate Russell's overtime premium rate in workweeks Russell earned commissions.

36. Russell's employment with Defendant ended on or about June 27, 2022. Defendant did not pay Russell all earned wages following the termination of his employment on the next regularly scheduled pay day. At the time of Russell's termination, Defendant owed Russell at least $13,515.01 in unpaid earned wages, including but not limited to earned commissions.

37. Defendant knew Russell worked unpaid regular and overtime hours because Russell's hours and physical location were tracked by a GPS based time keeping system which Defendants accessed on a daily basis, giving them knowledge of all weeks when Russell worked more than forty hours per week.

38. Defendant willfully failed to pay Russell for straight time hours worked off-the-clock in violation of the NCWHA.

39. Defendant willfully failed to pay Russell the overtime premium rate required by the FLSA for hours worked off-the-clock whereby his total number of hours exceeded forty (40) hours in a workweek.

40. Defendant willfully violated the FLSA by failing to include commissions in Russell's regular rate, thus unlawfully reducing Russell's overtime rate.

41. Defendant willfully violated the FLSA by averaging the number of hours Russell worked during a two-week pay period to avoid paying overtime hours as required by the FLSA.

**PLAINTIFF'S FIRST CAUSE OF ACTION**
**(Violation of the FLSA – Unpaid Overtime)**

42. Plaintiff incorporates by reference paragraphs 1–41 of his Complaint.

43. Plaintiff's first cause of action arises from Defendant's policy and practice of failing to pay all overtime wages earned by Plaintiff in violation of the FLSA.

44. Defendant violated the FLSA, as interpreted by 29 C.F.R. § 778.104, by averaging hours worked over a two-week pay period to avoid paying overtime for hours worked in excess of forty (40) in a single workweek.

45. Defendant violated the FLSA by failing to compensate Russell for off-the-clock work resulting in unpaid overtime hours in workweeks where Plaintiff worked exactly forty (40) hours or worked in excess of forty (40) hours due to Defendant's automatic lunch deduction.

46. Defendant violated the FLSA, as interpreted by 29 C.F.R. § 778.120, by failing to include earned commission when calculating Russell's overtime premium rate in workweeks where Defendant paid Russell commissions.

47. Defendant's violations of the FLSA were willful.

### PLAINTIFF'S SECOND CAUSE OF ACTION
### (Violation of NCWHA – Failure to Pay Earned Wages)

48. Plaintiff incorporates by reference paragraphs 1–46 of his Complaint.

49. Plaintiff's second cause of action arises from Defendant's policy and practice of failing to pay earned wages in violation of N.C. Gen. Stat. §§ 95-25.6, 95-25.7, and 95-25.8.

50. Defendant failed to timely pay all wages earned by Plaintiff on his regularly scheduled paydays, including the next regularly scheduled payday following the termination of Plaintiff's employment.

51. Defendant violated the NCWHA by unlawfully deducting wages in workweeks where Plaintiff worked less than forty (40) hours due to Defendant's automatic lunch deduction.

52. Defendant's violation of the NCWHA was willful.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief:

a) Order pursuant to Section 216(b) of the FLSA finding Defendant liable for unpaid overtime wages due to Plaintiff and for liquidated damages equal in amount to the unpaid overtime wages found due to Plaintiff.

8

Case 5:22-cv-00416-M-RN   Document 1   Filed 10/12/22   Page 8 of 9

b) Order pursuant to the NCWHA finding Defendant liable for unpaid regular wages due to Plaintiff and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff.

c) Order Defendant to pay to Plaintiff all attorneys' fees, litigation expenses, and costs incurred as a result of bringing this action;

d) Order Defendant to pay to Plaintiff pre- and post-judgment interest on all sums recoverable; and

e) Order Defendant to provide Plaintiff with all other legal and/or equitable relief to which he is entitled.

Dated: October 12, 2022

Respectfully submitted,

/s/ Corey M. Stanton
Philip J. Gibbons, Jr., NCSB #50276
Corey M. Stanton, NCSB #56255
**GIBBONS LAW GROUP, PLLC**
14045 Ballantyne Corporate Place, Suite 325
Charlotte, North Carolina 28277
Telephone:(704) 612-0038
E-Mail:   phil@gibbonslg.com
          corey@gibbonslg.com

*Attorneys for Plaintiff*